UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**SOUTHWEST AIRLINES CO.,**

      Plaintiff,

vs.

**THE CITY OF SAN ANTONIO, TEXAS and
JESUS SAENZ, in his official capacity as
Director of Airports for the City of
San Antonio, Texas,**

      Defendants.

**Civil Action No. 5:24-cv-01085-XR**

**NON-PARTY DELTA AIR LINES, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL**

    Non-party subpoena recipient Delta Air Lines, Inc. ("Delta") hereby opposes Plaintiff

Southwest Airlines, Inc.'s ("Southwest") Motion to Compel (Dkt. 27) ("Motion" or "Mot.").

## I.      INTRODUCTION

    Southwest's demand that Delta—a non-party to this litigation—search for and produce

every document and communication in any way related to Terminal A and (the soon to be

constructed) Terminal C at the San Antonio Airport is nothing more than a premature, overbroad

fishing expedition for Delta's confidential documents that have no bearing on the claims in this

case.

    Southwest has sued Defendants The City of San Antonio (the "City") and Jesus Saenz

(collectively, "Defendants") based on the City's decision to assign Delta and American Airlines,

Inc. ("American") to Terminal C of the San Antonio Airport instead of Southwest, leaving

Southwest to occupy Terminal A where it currently operates. In connection with Southwest's

motion for a preliminary injunction, the Court granted "limited" discovery related to Southwest's

request for a preliminary injunction, the City's gate allocation decision, and the impact of that decision on Southwest. Southwest can obtain this limited discovery from the City—as this entire case is about whether **the City** violated the Airline Deregulation Act ("ADA") because of **the City's decision-making process** in connection with Terminal C. There is no need to burden a non-party with discovery that is available from the parties to the litigation. Yet Southwest has done nothing to comply with its obligation to tailor the requests to avoid an undue burden on Delta.

Nor does Southwest have any need for Delta's internal documents or communications with third parties regarding the San Antonio Airport. Southwest's Motion fails to even attempt to explain how Delta's internal communications or communications with third parties related to Terminals A and C are relevant to this case. Moreover, Delta's internal communications are highly confidential and proprietary, and Delta and Southwest are fierce competitors, subjecting these requests to an even higher degree of scrutiny. Because the subpoena imposes a significant burden on non-party Delta far disproportionate to the needs of the case—particularly at this preliminary stage where the Court has allowed only limited discovery—the Motion should be denied.

## II.    BACKGROUND

On September 26, 2024, Southwest filed a lawsuit against Defendants based on the City's decision to assign Delta and American to Terminal C of the San Antonio Airport instead of Southwest. Dkt. 1 ¶ 21 ("Compl."). Southwest contends that for two years, Defendants promised Southwest that it would be assigned to Terminal C. Mot. at 2. According to Southwest, Defendants refused to honor their deal with Southwest because the City and Delta were engaged in a *quid pro quo* where the City would assign Delta to Terminal C if Delta promised to build a Sky Club. *Id.* Southwest contends that the City's conduct violated the ADA because, under its view, the City used subjective criteria related to rates and services to assign gates at the airport. Compl. ¶ 1.

At the same time Southwest filed its complaint, Southwest also filed a Motion for Preliminary Injunction ("PI Motion") and Emergency Request for Temporary Restraining Order ("TRO"). Dkt. 2. The Court denied the request for a TRO on October 1, 2024. Dkt. 17. In denying the TRO, the Court concluded that Southwest failed to establish that the criteria the City used for gate allocations is a "law, rule, regulation, standard, or other provision" that refers to "official, government-imposed policies." *Id.* at 10. For that reason, Southwest failed to establish a reasonable probability of success on the merits. *Id.* at 12.

The Court scheduled a hearing on the PI Motion for December 16–18, Dkt. 21, and permitted the parties to engage in "early and accelerated discovery on the limited issues of (1) the elements of Southwest's claim for a preliminary injunction; (2) whether the City's gate allocation decision was an exercise of the City's 'proprietary powers and rights' and (3) the impact of the City's gate allocation decision on Southwest," Dkt. 22.

On October 25, 2024, Southwest served a subpoena on Delta seeking "[a]ny and all documents and communications—both internal and with any third party—relating to Terminal C, the Terminal C Assignment Decision, and Terminal A. Prior to serving its objections, counsel for Delta discussed with counsel for Southwest the overbreadth of Southwest's requests. *See* Declaration of Julia B. Bates ¶ 2 ("Bates Decl.") (attached hereto as Exhibit A). Delta then served its objections on November 8, 2024, explaining in detail the basis of Delta's objections to each request. *See* Mot., Ex. A. Delta objected to Southwest's requests as overbroad, unduly burdensome, and disproportionate to the needs of the case in that they seek documents and communications that are beyond the scope of the limited discovery granted by the Court, irrelevant to the claims in this case, and/or available from a party to the litigation, among other things. *Id.* On November 9, 2024, counsel for Southwest offered to narrow the timeframe of the requests to

July 1, 2023 through the present, but otherwise refused to narrow the subject matter of the requests. Bates Decl. ¶ 3. Because Southwest refused to narrow the scope of the requests in any respect, Delta informed Southwest that it would not be withdrawing its objections. On November 12, 2024, Southwest filed the instant Motion.

### III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 45 "governs subpoenas served on a third party . . . as well as motions to quash or modify or to compel compliance with such a subpoena." *Am. Fed'n Musicians of U.S. & Canada v. SKODAM Films, LLC*, 313 F.R.D. 39, 42 (N.D. Tex. 2015). Rule 45(d)(1) mandates that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Courts consider the following factors in determining whether a subpoena presents an undue burden: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *SKODAM*, 313 F.R.D. at 44. Where, as here, "the document request is made [to] a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.* "If documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them pursuant to Rule 45." *Ntakirutimana v. CHS/Cmty. Health Sys., Inc.*, 2011 WL 13135608, at *2 (S.D. Tex. June 28, 2011) (cleaned up). Courts may also "find that a subpoena presents an undue burden when the subpoena is facially overbroad," *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004), or if the

request is not reasonably tailored to matters relevant to resolving the dispute, *Simms v. Nat'l Football League*, 2013 WL 11578983, at*2 (N.D. Tex. Feb. 28, 2013).[1]

## IV.    ARGUMENT AND AUTHORITIES

All of the factors courts consider in analyzing the appropriateness of a subpoena under Rule 45 weigh in favor of denying Southwest's Motion. *First*, Southwest's requests are facially overbroad in that they seek "any and all" documents related to broad topics without any particularity. *Second*, the subpoena seeks documents—including confidential information of a competitor—that have no bearing on the narrow issue in this case relating to the City's decision about which airlines to assign to Terminal C. *Third*, any relevant documents in Delta's possession are also in the possession of the City such that Southwest does not need to burden a non-party for those documents. Given all of these defects in the subpoena, and accounting for the time and expense associated with identifying, collecting, and reviewing documents for production, the burden on Delta is significant and far disproportionate to the needs of the case.

### A.  The Subpoena is Facially Overboard and Lacks Any Particularity.

Southwest contends that Delta's objections "merely state the grounds of overbreadth, vagueness, and undue burden" without identifying the portions of the requests that are overbroad, vague, or impose an undue burden. Mot. at 4. Southwest ignores that the subpoena is facially overbroad and fails to describe the documents and communications it requests from Delta with any particularity. Instead, Southwest broadly seeks "any and all" documents and communications related to Terminal A, Terminal C, and the Terminal C Assignment Decision—including Delta's internal documents, communications with the City, and communications with "any third party"—

---

[1] Southwest's Motion relies on Rule 26; but while Rule 26 allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," it also limits discovery when it "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(1), 26(b)(2)(C)(i).

without any subject matter limitation or specificity to the issues in this case and despite the fact that much of this information is in the possession of the City.

Courts routinely find that such requests for "any and all" documents or communications broadly relating to a general subject matter are overbroad. *See e.g., In re Subpoena Served on Afiliated Foods, Inc.,* 2021 WL 4439796, at * 5 (N.D. Tex. Sept. 28, 2021) (request for "all documents and data reflecting your analysis of competition" is facially overbroad); *Morgan v. Napolitano*, 2013 WL 2384337, at *3 (E.D. Cal. May 30, 2013) ("The Court finds plaintiff's discovery request, specifically the use of the phrase 'all documents relating to,' to be both overbroad and unduly burdensome.").

In any event, each of Delta's objections identifies the aspect of the request that is overbroad, unduly burdensome, or disproportionate to the needs of the case. *See e.g.,* Dkt. 27-1 at 3 (explaining Request No. 1 is overbroad and unduly burdensome because it seeks "any and all communications broadly related to Terminal C" without limitation despite the Complaint's focus on the City's decision making with respect to the Terminal C gate assignments); *id.* at 6–7 (explaining Request No. 6 is overbroad and unduly burdensome because it seeks "any and all communications" related to Terminal A, which has no bearing on the City's decision making with respect to the Terminal C gate assignments). The breadth of the document requests and lack of any particularity, alone, is sufficient basis to deny Southwest's motion to compel. *See SKODAM*, 313 F.R.D. at 53 (subpoena that sought "all" documents relating to broad topics was facially overbroad); *see also Turnbow v. Life Partners, Inc.*, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013) (quashing subpoena where requests were not "limited to any categories of documents relating to" the allegations at the heart of the litigation); *In re O'Hare*, 2012 WL 1377891, at *2

(S.D. Tex. Apr. 19, 2012) (subpoena seeking "all documents" were not particularized and imposed an undue burden).

**B. The Subpoena Seeks Documents That Are Irrelevant and Beyond the Scope of the Limited Discovery Granted by the Court.**

In addition to their facial overbreadth, Southwest's requests seek documents that are not relevant to Southwest's claims, confidential competitor information, and beyond the scope of the limited issues on which this Court granted discovery in connection with the PI Motion. Southwest's claims are based on the City's decision making with respect to assigning gates at Terminal C. *See* Compl. ¶ 2; *see also* Mot. at 2. In short, this case is about whether **the City** violated the ADA because of **the City's decision making process** in connection with Terminal C. That dispute hinges on documents uniquely within the City's possession.

Despite the narrow scope of Southwest's Complaint, and the limited discovery authorized by the Court, Southwest seeks all of Delta's internal documents and communications related to Terminals A or C as well as any communications with any third party. The requests thus seek a broad swath of information that lacks any connection whatsoever to the City's decision with respect to Terminal C gate assignments—much less any connection to the limited issues relevant to Southwest's PI Motion. Delta's internal communications related to Terminals A and C certainly have no bearing on whether the City was exercising its "proprietary powers and rights" in connection with its gate assignment decision. Dkt. 22 at 1. Nor are they relevant to the impact of the gate assignment decision on Southwest. *Id.* For the same reasons, Delta's communications with third parties related to Terminals A and C lack any relevance to Southwest's claims.

In its Motion, Southwest argues that Delta's internal communications related to Terminals C and A are relevant because: (1) Delta may have communicated internally about communications with the City concerning Terminal C, and (2) Delta may have documents regarding the

inadequacies of Terminal A. Mot. at 6. Neither justification is availing. As an initial matter, Southwest's hypothetical musings about documents Delta may have in its possession is the epitome of a fishing expedition. *Chinitz v. Realogy Holdings Corp.*, 2020 WL 6265083, at *2 (W.D. Tex. Oct. 22, 2020) (quashing a subpoena where the plaintiffs could not demonstrate how their overbroad discovery requests were relevant). Moreover, with respect to Terminal C, Southwest claims (although without support) that the production it received from the City "confirm[s] a *quid pro quo* deal" between the City and Delta. Mot. at 5. If that is true, Southwest does not need to gain access to Delta's internal communications to show a likelihood of success on the merits. In addition, whether Delta has discussed internally the inadequacies of Terminal A has no bearing on any matter relevant to the PI Motion.

Moreover, Southwest's requests for Delta's internal documents seek confidential and sensitive information from Delta, which is a fierce competitor of Southwest. Such requests are subject to heightened scrutiny particularly where, as here, the requested information has no bearing on the claims or defenses of the lawsuit. *See Vinton Steel, LLC v. Com. Metals Co.*, 2023 WL 2518881, at *3 (W.D. Tex. Mar. 14, 2023) ("The Rule provides additional protections where a subpoena seeks trade secret or confidential commercial information from a nonparty." (internal quotation marks and citation omitted)); *see also id.* (where a subpoena seeks confidential commercial information, "the burden shifts to the requesting party to show 'a substantial need for the . . . material that cannot be otherwise met without undue hardship'") (quoting Fed. R. Civ. P. 45(d)(3)(C)(i)). This presents an additional basis for denying Southwest's fishing expedition into Delta's internal, proprietary documents and communications.

Southwest's requests for Delta's communications with third parties related to Terminals A and C fare no better. Southwest contends communications exchanged between Delta and any third

party are relevant because "[t]he City is claiming . . . that it relied on the master architect's recommendation in selecting Delta for Terminal C." Mot. at 5. Notably, Southwest fails to mention a single other third party it claims has any relevance to Southwest's claims in this case aside from the architect, effectively conceding the overbreadth of the request. And even with respect to the architect's involvement, Southwest fails entirely to explain how Delta's communications with the architect are relevant to whether and how the City relied on the architect's recommendations in connection with gate assignments. In any event, as shown below, Southwest has also subpoenaed the master architect, Corgan, who has agreed to produce documents, rendering this request duplicative and wholly unnecessary. *See infra* Section IV.D.

**C. Southwest Has No Need for the Documents it Has Requested From Non-Party Delta.**

Southwest's need (or lack thereof) for the requested documents also weighs in favor of denying the Motion. This is particularly true with respect to Southwest's requests for all of Delta's communications with the City (Requests 1 and 6) and all documents Delta provided to the City (Request 4). The City is a party to the litigation; Southwest can accordingly obtain this information from the City without burdening a non-party. *See Ntakirutimana*, 2011 WL 13135608, at *2; *see also Suntrust Mortg., Inc. v. Busby*, 2009 WL 5511215, at *2 (W.D.N.C. Dec. 18, 2009) ("[W]here the sought-after documents are within the possession, custody, or control of a party, it is not appropriate to employ Rule 45 to secure such documents from a non party.").

While Southwest complains the City's production is "limited," that does not give Southwest leeway to burden Delta. Southwest should address its grievance with the City. *See Scrum All. Inc. v. Scrum, Inc.*, 2020 WL 6559625, at *3 (E.D. Tex. Nov. 9, 2020) (suspicion that the defendants have not produced all documents responsive to the plaintiff's request "should be address by a motion to compel, not a subpoena to a nonparty"); *id.* ("Instead of burdening nonparties, Plaintiff should obtain the information directly from the source."). The same is true

with respect to Southwest's argument that it needs documents relevant to the "basis for the architect's recommendation" to the City. Southwest has subpoenaed the architect, who has confirmed that they will be producing documents related to the basis of its recommendation to the City. Bates Decl. ¶ 4. Finally, Southwest's Motion fails to make any attempt to demonstrate how the information Southwest has requested from Delta is necessary for Southwest's PI Motion— which is the only discovery that has been granted to date in this case. *See* Dkt. 21.

**D.  Southwest's Overbroad and Irrelevant Requests Impose an Undue Burden on Non-Party Delta.**

As shown above, all of the factors courts consider in analyzing whether a subpoena imposes an undue burden on a non-party weigh in favor of denying Southwest's Motion. And Southwest has refused to do anything to lessen this burden and narrowly tailor its requests other than to offer a relevant time frame of July 1, 2023 through the present. Even with this "narrowed" timeframe, the subpoena seeks documents covering an almost seventeen-month period and will require Delta to expend significant time and resources to identify and produce responsive documents, interrupting Delta's business operations. Due to the breadth of the requests, the relevant documents and communications could be in the possession of well over a dozen people across several different departments at Delta. Bates Decl. ¶ 5. Delta will have to interview those individuals and then work with them to identify and collect their electronic mailboxes and other sources of information related to the San Antonio Airport. *Id.* Delta will also have to devise search terms, run those terms over the collected documents, and review all documents to identify responsive information. Due to the breadth of the requests, this process would involve significant time and expense. *Id.* ¶ 6. Southwest has failed to take reasonable steps to avoid imposing this substantial burden and expense on Delta. The Motion should be denied.

Respectfully submitted this 19th day of November, 2024.

_/s/ Julia B. Bates_
Julia B. Bates
Lee Yeakel
jbates@kslaw.com
lyeakel@kslaw.com
**KING & SPALDING LLP**
500 West 2nd Street
Suite 1800
Austin, TX 78701
Tel: (512) 457-2053


_Attorneys for Defendant, Delta Air Lines, Inc._

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of November 2024 the foregoing was electronically filed and served on all counsel of record.

<u>/s/ Julia B. Bates</u>
Julia B. Bates